JAMES M. COMEY, Respondent, *against* WALLACE C. ANDREWS, Appellant.

(Decided March 5th, 1888.)

In an action for an accounting of co-partnership affairs, defendant alleged a prior termination of the partnership by a written instrument of dissolution signed by both parties, and a settlement of accounts in accordance therewith. Plaintiff denied that he had signed such an instrument; but defendant's testimony to its execution was corroborated by other instruments, afterward signed by plaintiff, transferring his rights in certain firm property, apparently in pursuance of the terms of the disputed instruments, and by a receipt, also subsequently signed by plaintiff, for a sum of money received from defendant " in full of account and settlement; " as to which receipt plaintiff alleged that the words above quoted had been added after he had signed it. *Held*, that while the burden of proof to establish the validity of these instruments, and the actual making of the settlement claimed under them, was on defendant, he made out a strong presumptive case by the production of the instruments themselves, and his own oath as

to the genuineness of the signature and the circumstances attending their execution; and as the admitted facts did not support plaintiff's denial, involving accusations of forgery and fraud, which the law is loath to presume, but rather corroborated defendant's testimony, the weight of evidence was so clearly in defendant's favor that findings by the referee in favor of plaintiff on these points were error, for which a judgment thereon should be reversed.

APPEAL from a judgment of this court entered on the report of a referee.

The facts are stated in the opinion.

*Everett P. Wheeler*, for appellant.

*Rufus F. Andrews*, for respondent.

LARREMORE, Ch. J.— It is to be regretted that the learned referee before whom this case was tried did not furnish the court·with an opinion, or with some memorandum in writing, however brief, giving his views of the evidence and showing by just what process of reasoning he reached the result embodied in his report. As it is, with nothing but the record and the original exhibits before us, his con-.clusions seem so contrary to the weight of evidence that we are obliged to reverse the judgment on that ground. It is conceded that the plaintiff and defendant were co-partners in trade under the firm name of Comey & Andrews, from some time in the year 1868 until on or about the 29th day of September, 1877. The plaintiff contends that the partnership was not terminated upon the day last named, but extended indefinitely beyond, and is in fact in existence yet. The defendant claims that such co-partnership was brought to an end upon said 29th day of September, 1877, by the execution of a written instrument signed by both himself and the plaintiff. Such alleged instrument was produced upon the trial, and is before us. It bears the defendant's signature and also what purports to be the signature of the plaintiff. The plaintiff denies that such alleged signature is his, and that he ever signed such an instrument. · There

is no subscribing witness, and the decision of this question of fact depends entirely upon the conflicting statements of the parties, with, however, such corroboration as the surrounding circumstances and subsequent admitted facts will furnish.

We think upon all the proof in this case that the weight of evidence is strongly in favor of the contention that plaintiff did sign the instrument, and that he did so intentionally and deliberately. We have compared the disputed signature with several others among the exhibits which are conceded to be the plaintiff's, and as far as we can judge without the help of experts, the signature under consideration seems to be the work of the same hand as the others. The defendant gives circumstantially the facts leading up to the execution of this instrument, and the circumstances under which it was actually executed. Furthermore, other papers in the case, confessedly signed by the plaintiff after the disputed instrument, corroborate its genuineness by being apparently given in pursuance of its terms, and in conformity with the general scheme of settlement which it contains. This is so with regard to the so-called Exhibits 1, 2, and 3 of October 8th, 1885. This is also the case with regard to the receipt of plaintiff for six hundred dollars, dated April 17th, 1882, being Exhibit 2 of June 13th, 1885. The general scheme comprehended by the instrument of September 29th, 1877, is, (1) that the partnership shall be dissolved; (2) that the plaintiff sells and transfers to the defendant as his sole property all his (the plaintiff's) interest in all the assets and property of the firm; (3) that the consideration for the above transfer is that plaintiff shall have credit on the books of the firm for his one-half of proceeds of sale of the firm property; (4) it is expressed that the object of the execution of the instrument is to reimburse the defendant for money advanced from time to time for the interest of, and in aid of, said firm, the business to be wound up as soon as possible and to the best advantage, and final settlement to be had as soon as possible of all accounts. The three instruments, also, above referred to, Exhibits 1, 2, and 3 of October

8th, 1885, were transfers of plaintiff's right in and to certain pieces of realty in which the firm had an interest, which were recorded.   The receipt of April, 1882, read as follows :

"Received, New York, April 17th, 1882, of W. C. Andrews, Six hundred (600) dollars in full of account and settlement.

(Signed)      " J. M. COMEY."

Defendant claims, with regard to this, that it was given after all the affairs of the firm had been settled up, and, as expressed in the receipt itself, in full of account and settlement between the parties, under the former instrument of dissolution of December 29th, 1877.   All these instruments, to which reference has been made, taken together, would seem to bear out defendant's contention.   But plaintiff's answer to the final receipt is another charge of fraudulent alteration of the instrument itself.   He testifies that although he received the $600 at the time named, and although the signature to the receipt is genuine, yet that when he signed such receipt it ended with the word " dollars," and that the words " in full of account and settlement " have been added by the defendant since it was signed.   Here again we think the weight of evidence is strongly in favor of the defendant's version of the transaction.   He gives the circumstances with enough particularity to show that the incident made an impression on his mind, but still without sufficient minuteness of detail to make exact recollection seem phenomenal or suspicious.   Also, as far as we can judge from an actual inspection of the receipt itself without the aid of experts, there is nothing to lead one to believe that the words in question were inserted after the signature had been made.   They are in the same handwriting, apparently made with the same pen and ink, and follow along in the same line after the word "dollars" as if written at the same time.

Plaintiff, in order to make out his case, has been obliged to accuse the defendant of forging his signature to one important instrument and fraudulently altering another

after its execution. The law is loath to presume either forgery or fraud, and, as before shown, the admitted facts and surrounding circumstances do not seem to us to support plaintiff's accusation, but rather to corroborate the defendant's testimony. When we turn to the referee's action on this subject, we find in the fifteenth and nineteenth matters of fact found at plaintiff's request, that he has fallen into error both as regards form and substance. He has found matters of evidence in both of such findings. A court or referee is to find matters of fact and conclusions of law, not the evidence which, in his opinion, supports them. He has also found that the burden of proof was upon the defendant to establish the validity of these papers, and that the settlement claimed to have been made under them was actually made, and that defendant has failed to prove such validity and such settlement. In this we think he clearly erred. The burden of proof doubtless was upon the defendant in the first instance, but he made out a strong presumptive case, by the production of the instruments themselves, and his own oath to the genuineness of the signature and the circumstances attending their execution. To offset this presumptive case was simply plaintiff's uncorroborated denial, and we are obliged to hold that the weight of evidence is so clearly in favor of the defendant upon such points that findings fifteen and nineteen are error. The referee in his sixteenth finding also fell into an inconsistency that would in itself be error if any practical result had followed from it. This concerns the instrument of dissolution, which plaintiff denies that he ever signed. The referee finds that, although plaintiff never signed it, yet as the defendant has signed it, and has offered the paper in evidence, he is bound by the final clause thereof, to wit: " The business to be wound up as soon as possible and to the best advantage, and final settlement to be had as soon as possible of all accounts," as a stipulation, which would remove any question which might have existed prior to that date as to the statute of limitations upon the accounts of the co-partners. Such finding is clearly

erroneous.  It is difficult to perceive how a purely one-sided instrument can be given effect as a stipulation, and how the referee could hold that the plaintiff was a stranger to the instrument, and yet that the defendant was bound by its terms.    Mutuality is fully as essential an element of a stipulation as of a contract.    Possibly the idea which the counsel for the plaintiff and the referee had was that the production of. this instrument by the defendant, signed by himself, although they claimed that plaintiff had nothing to do with it, would yet operate as against the defendant, as an estoppel, and would preclude him on such ground from raising the statute of limitations.    But I do not think that even this theory would be tenable.

It might be claimed that, although the instrument of September 29th, 1877, wrought the technical dissolution of the firm, yet an accounting would nevertheless be necessary, because this instrument provided, not for the payment to plaintiff of a gross sum as the consideration thereof, but of a portion of the proceeds to be realized upon the sale by defendant of the firm's assets.    But defendant contends, and produces the receipt of April 17th, 1882, in support of such contention, that a settlement was had between the parties at or about that date.    If this fact be true, and, as before shown, the weight of evidence upon the present trial is strongly in its favor, it would dispense with any accounting. The alleged fact of a settlement out of court having been agreed upon and consummated, will be the first thing to be determined upon the new trial to be ordered in this case.

Furthermore, outside of the questions already discussed, it seems that, according to the books of the firm, which, during the whole period of its active business, were kept by the plaintiff, the partnership comes out in debt, not to the plaintiff, but to the defendant.    Plaintiff is obliged to allege payments outside of those contained in the books in order, even on his own theory, to bring defendant out a debtor.    He testifies that firm moneys in considerable amounts were paid to the defendant directly, and that of such payments no

memoranda were made in the books. His explanation is given at page 28:

" Q. Why did you not keep an account on your books of those amounts which. you have testified to went into the hands of the defendants?

" A. He, Mr. Andrews, said he would keep account of it, and not to put it on the books, and when he said that, I never put it on my books."

This statement may of course be true, but taken in connection with all the other facts in the case, the court or referee, upon a new trial, might reach the conclusion that the books of the firm were not only correct but complete, even if it was found that the alleged instruments of settlement were forgeries and that no settlement ever took place.

The judgment must be reversed and a new trial ordered, with costs to abide the event.

J. F. DALY, J. — I concur, and also concur with the suggestion of Judge VAN HOESEN as to a trial of certain issues by a jury.

VAN HOESEN, J. — It is well settled that the findings of a referee or a single judge upon disputed questions of fact ought not to be set aside by the General Term merely because the judges would not have found the facts in the same manner. If the case be a doubtful one, if the conclusion might well be either way, the General Term must not disturb the judgment, even though the judges are of opinion that a different decision would have been more in the interests of justice. The reason of this is that those who simply read the testimony cannot possibly measure the intelligence, the candor, and the character of a witness as well as those who hear and see him as he is under examination. It is only where the error of the referee in deciding the facts is manifest, that the General Term should reverse his decision (Green v. Roworth, 3 N. Y. St. Rep. 568, and cases there cited).

Is the error of the referee in this case manifest? Must

we say, after allowing for the opportunities that he had of seeing the witnesses, after allowing that it is his province to determine the credibility of the witnesses, to weigh the evidence, and draw inferences and conclusions from it, that it is evident that his decision cannot be right? I think we must so hold, though I believe that the referee made an honest, faithful effort to reach the true conclusion. His error arose, in my opinion, from giving too great weight to the charge that the signature of the plaintiff to the agreement of dissolution, dated September 29th, 1877, is a forgery. That signature looks to me very suspicious. It is unlike the other signatures of the plaintiff; it appears to have been built up by the process sometimes called painting, and it is blotted, as if the writer, conscious of the imperfections of his imitation, had sought to conceal, by blurring, the defects of his handiwork.

Of course, if the crime of forgery were fastened upon the defendant, it was easy thereafter to believe him guilty of the many rascalities that the plaintiff charged upon him. But though the signature to the agreement of dissolution was so badly done as to excite suspicion, the only evidence that it was a forgery was given by the plaintiff himself; and to his testimony not much weight can be allowed. There are many strong circumstances in the case that tend to prove very satisfactorily that the signature is not after all a forgery. I have said that not much weight is to be given to the plaintiff as a witness, and I will now give my reason for making that observation. The plaintiff, when first cross-examined, testified as follows: "I know H. C. Johns; the partnership did not have a note of his; the defendant did not give a note of his to me to collect; I did not know a man named Heller or Hellen or any similar name; the defendant did not give me a note of $779 to collect made by Heller or a person of any such name; he gave me no note to collect except the Harris note."

A paper was afterwards introduced in evidence, signed by the plaintiff. It was dated June 26th, 1878, and acknowledged the receipt "for collection" of the Harris

note, of a note for $314.50, dated September 19th, 1877, signed by H. C. Johns, and of a note dated December 1st, 1877, for $779, signed by A. Heller. These notes were all received from the defendant "for collection" by the plaintiff. When confronted with that receipt, the plaintiff said, " The Johns note I have, and I produce it; it is the Johns note referred to in the receipt. The Heller note was destroyed in the hotel fire when I lost my papers. Nothing was ever received on those notes as far as I know." Those notes the plaintiff had denied all knowledge of, and yet he confesses that one of them was in his possession, and he knew just when and where the other had been destroyed. There was a reason for his denying all knowledge of those notes : they were partnership property (the Harris notes certainly were), and yet the plaintiff took them from the defendant "for collection," in June, 1878. If the dissolution occurred in September, 1877, this transaction would have been perfectly natural, but if the partnership was still in existence why should the plaintiff give to the defendant a receipt that acknowledged the defendant's sole ownership of the notes, and his own undertaking to " collect " them — an undertaking that implied the obligation to account to the defendant for their proceeds ?

Now, whether the plaintiff was untruthful, or whether he was merely forgetful, his testimony, if not impeached, is so untrustworthy that it must be closely scrutinized when it relates to a fact that is prejudicial to his interests in this action. If he can forget notes that he has in his possession when his attention is pointedly called to their existence, it is not at all unlikely that he should forget having signed a paper which he never had in his possession.

Again, he swore positively that there never was a settlement of the partnership accounts after the year 1869. A written settlement dated October 16th, 1874, signed by both parties, the plaintiff and the defendant, was then shown to him. The signature is undoubtedly his; he admits it; but he says that no such settlement ever occurred, and that his signature was procured by a representation that the

paper was of an entirely different, and of a comparatively unimportant, nature. The paper acknowledges an indebtedness to the defendant. Why he did not read the paper when his signature was requested he does not explain except by saying that he had great confidence in the defendant, and therefore signed anything he presented without taking the trouble to examine it. Explanations of that character are never very satisfactory. They are not so in this case, for the conveyances of which I am to speak hereafter would not, in all probability, have been executed if the affairs of the partnership had remained open, and if the plaintiff had believed that the defendant was largely in his debt.

The agreement of dissolution, dated September 29th, 1877, is denounced by the plaintiff as a forgery. It provides, first, for a dissolution of the partnership, and afterwards for a transfer to the defendant of the proceeds of the Salisbury property, of the Carson property, of the Tallman property, and of certain oil leases in Warren County. It acknowledges an indebtedness to the defendant for moneys advanced in the business of the partnership, it provides for the repayment of the defendant, and then provides for the speedy winding up of the business, " and a final settlement as soon as possible of all accounts." Now, that it is a forgery, there is nothing to show, except the suspiciously bad signature — as to which there is room for a difference of opinion — and the testimony of the plaintiff himself.

If it should appear that the transfers that the agreement provided for were afterwards executed, there would be the strongest evidence that it was not a forgery, but that it was a contract deliberately made, and with a full understanding of its contents. The imperfections of the signature would then be ascribed to nervousness, or to some other cause that temporarily affected the nervous system, and the testimony of the plaintiff that it is a forgery would be rejected. It is proved that three conveyances were executed by the plaintiff, on February 14th, 1878: one conveys the plaintiff's interest in the Tallman farm, another conveys the plaintiff's

interest in the oil leases in Warren and McKean counties, and the third conveys the interest of the plaintiff in the Briggs farm.

The Salisbury farm had been conveyed by both parties to a Mrs. Gray on September 5th, 1877, and it was to the plaintiff's share of the moneys that Mrs. Gray was to pay that the defendant acquired title by the agreement of dissolution. The Carson property had been sold to a Mr. Ackerley, and the other properties referred to in the agreement were, after September 29th, 1877, controlled by the defendant, with the full concurrence of the plaintiff. Though the parties subsequently had business together they were not partners. The dissolution unquestionably took effect at the date of the paper that is called a forgery.

It has already been seen that in June, 1878, the plaintiff, when intrusted by the defendant with the possession of certain notes, receipted for them as given to him for the purpose of collection.

Surely, there is strong evidence of a dissolution, irrespective of the disputed agreement. The conveyances, the action of both parties, their dealings with each other, not as partners, but as capitalist and "prospector" (to use a word borrowed from the mining camps), show that there was in fact a termination of their partnership relations; and no reason can be given why, if they had ceased to be partners, there should have been any hesitation in stating that fact in writing.

The duty of accounting remained, and the collection of the outstanding assets of the partnership was assumed as a duty by the defendant. It is said by the defendant that there was nothing coming to the plaintiff out of the assets of the firm; but nevertheless the defendant, in June, 1882, paid to him, or, as he prefers to say, donated to him, the sum of $600.

At the time of the handing of the money to the plaintiff, the defendant wrote a receipt, which the plaintiff signed, and which declared the $600 to be in full of all accounts and in settlement. The words "in full of all accounts

and in settlement," the plaintiff swears were not in the receipt at the time that he signed it. If this be true, the defendant committed the crime of forgery, for he must have interpolated the words over the plaintiff's signature. But is it true? Does not the evidence, taken as a whole, show that it is the habit of the plaintiff to charge forgery or fraud whenever he is confronted with a document that presents a barrier to his claims?

I think that in view of the other charges that the plaintiff has made, and which, as I believe, he has utterly failed to sustain, it would be unreasonable to hold that the defendant had committed the high crime of forgery, when the only evidence of his guilt is the accusation of the plaintiff, a party in interest, whose testimony on other points we have felt that we could not rely on. The judgment should, in my opinion, be set aside, and the questions of forgery and fraud should be tried by a jury. The accounting should be deferred until a jury has passed upon the validity of the papers that either bar the plaintiff, or else show the defendant to be under obligations to account to him.

Judgment reversed and new trial ordered, with costs to abide event.